Good morning. We have two argued cases this morning. The first of these is number 13-1203, United States v. Millenium Distribution Lumber. Mr. Purcell. Your Honor, with your leave, my name is Joel Junker, and I'll take the first argument, and Mr. Purcell will succeed me after that. That's fine. That's fine. Thank you. May it please the Court, my name is Joel Junker. I'm here on behalf of Millenium Lumber Distribution Company. Mr. Purcell and I have, for efficiency purposes, divided our arguments, and I will be addressing the exhaustion doctrine, and he will be addressing the prejudgment interest issues. In the short time I have, I, of course, look forward to entertaining the Court's questions. Good, Mr. Junker. What exactly – exactly what remedies did the government fail to commence? Remedies, Your Honor, the administrative process that we think should have been completed under the exhaustion doctrine were the process for determining whether there were any complete defenses or mitigating circumstances under 1623. Do you agree that mitigation proceedings are, one, voluntary, and two, initiated by the importer or surety filing the petition? I think the law is clear that they are not required by law for purposes of 2415. However, I don't think that the petitioning process alone is an administrative process. Does the government ever file such a petition? The government does not file a petition, Your Honor. They rule on the petition. How could the government be taxed with fair to exhaust when it doesn't have a petition to file? The petitioning process is not the administrative process that's required. The administrative process is the administrative notice started by the administrative notice on the claim for liquidated damages. Within that administrative process, there can be a petition filed as a matter of right. But that alone is not a procedure within itself that requires exhaustion. What did the government fail to do that it was supposed to do? Complete the notice of liquidation. Allow, give notice, excuse me, complete the process for the administrative claims for liquidated damages. They gave notice. That notice gave the importer the right to petition. It put the matter on hold. It never came back and gave the petitioner the opportunity to deal in a meaningful way with the complete defenses or the mitigating circumstances, which are also a matter. And we submit that under 2637, even in a short amount of time, they are required to complete that process as required by 2637. What process didn't they complete? I mean, the mitigation process required you or the surety to initiate something, which you didn't do. So what process was there to complete? Your Honor, there is no point or opportunity for us to initiate a petition when the case has been put on administrative holding status and when the underlying issues, which are the basis for the liquidated damages, had not been resolved by a court of law on appeal. So we were, both parties were. Why do you refuse the government's suggestion that the status simply be continued and you waive the statute? I'm sorry, could you repeat that, Your Honor? The government suggested that you and the bonding company waive the statute of limitations. Why do you refuse that? Very simply, Your Honor. First of all, they did do the initial waiver, which ran and told the statute of limitations for two years. When they came back in 2005, five years after the imports, it was decided by the surety and Millennium that it does not make sense to extend the period of time because we would, at the point we did come to litigation as anticipated at the conclusion of the administrative process, which was at the conclusion of the underlying appeals, we would essentially be in the state of claims. Millennium was effectively shut down in their business of importing trust components. And so they're a shell company. To potentially sit back and wait and have to prove everything, you know, some five, six years down the line when you're a shell company, you no longer have employees, you're past the customs requirement for retaining records. You forced the government to file at that point. We didn't force the government to do anything, Your Honor. We relied on our congressionally provided protection against stale claims. And that should not be held against the parties to exercise their rights given to them by Congress. It shouldn't be held against the government that they protected their rights. The government had the opportunity to protect their rights. As their rules show, even in extremely late filed notices, within 180 days of the statute of limitations, here we're outside that. We're almost a year away from it. They are to follow a procedure where they can give at least seven days' notice to the petitioner to file it, and once they reach a decision, then they refer it to the Department of Justice for liquidation. They could have done that inside 180 days. We don't know why they didn't do it sooner. And you may ask, if I were on the court, I would ask, well, if you didn't know the underlying claims validity from your appeals to the court, why bother with the petition? And the answer is, Your Honor, that those issues before the court dealt with exonerative defenses, whether the liquidated damages could be applied at all or found at all. There are also mitigating circumstances of which Millennium had many. You're running over your time. I'm sorry. Can I just ask one question? Go ahead. What case do you have or cases that applies the 2637D exhaustion requirement against the government? The only case that we found that applies it in this context, Your Honor, is the Canix case, which in turn was relying on Ataka and Bercow, which were 2415A cases. There are no cases which indicate that liquidated damages cases can proceed regardless of the restrictions of 2637. We submit that Canix is the first of its kind, and it relied on inappropriate authority. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honors. I need to talk just about the pre-judgment interest issue. This is really a – It strikes me that the surety got a good deal here. Why isn't interest – why wasn't interest awarded from 2001 against the surety as opposed to 2005? Because as I understand it, the surety becomes liable on the bond when the demand is made at the principal, not when the demand is made at the surety. So why is it that you didn't have to pay interest from 2001 to 2005? Well, actually, as I understand the case law, the surety's liability under a bond does not ripen until the demand is made on the surety. Yes, but we know that that's merely a procedural matter that doesn't affect the money or the statute of limitations either, that the obligation arises when the demand is made on the principal. It isn't my understanding of the law that the surety has any obligation, any payment obligation under its bonds until a demand is made on the surety at the earliest date. That is my – that's my understanding, and therefore they had no obligation prior to that. This case really is about context. What is the delay that you're – there's some reference in your brief to the government delaying and bringing proceedings. What is the delay that you're talking about? Just the period of time that it took to move through the liquidated damages proceeding, the underlying classified cases. But that's why they had to stay those proceedings. How can that – how can the government be responsible for the delay that you requested? It's one of the factors that – No, no, but you're not answering the question. Was there any delay that the government was responsible for? In – well, in a sense of it, instead of waiting really to the last – almost to the last minute before the statute of limitations to bring its action. That's one of the delays. Well, it brought the action in 2006, right? I'm not sure what the – So for seeking to recover liquidated damages.  They brought the – the government brought the action in 2006. And then it was stayed at your request pending the outcome of the tariff classification, right? Well, the tariff – yes. How did the government delay something? Well, there are several delays. The main is the tariff classification proceeding that went on. Well, you're the ones who brought that. Well, actually, the principal did. Well, okay. That was brought, and which the surety liability is not really – under the bond really doesn't ripen until it's a final liquidation, protest process, and so on. So their delay in payment was awaiting those proceedings to be resolved, which is what the surety's right is. Suretyship is not insurance. We're not in the business to take risks of not being reimbursed, of not being able to raise protest tests and rely upon – The importation couldn't take place without the bond, could it? So you are guaranteeing certain things. Yes, but under – within the context of the customs laws and the rights that accrue under the customs laws, including protest rights, including finality of liquidation. This is really a little different than typical liquidated damages cases where the breach really is sort of obvious most of the time. The principal doesn't do what they're supposed to do under a bond or even in the contract case, commercial contract case. The breach is usually as obvious, and then a demand is made on the surety. The surety has to pay. There's a breach of a bond. In this case, we have a little unusual on term, which is tied to the tariff classification. So it's a little unusual in that respect. And there was a protest, timely protest filed against the classification. The surety merely waited until that was resolved. If the surety had paid prior to the resolution of the tariff classification case, they'd have no means – You say that in your brief that there's no mechanism, statutory or otherwise, for – That is true. That is correct. For recovery. But you didn't cite anything for that proposition. I believe we did, Your Honor. You cited some cases later, but not for that proposition. Well, I believe we did in somewhere within our brief. It's not a case, but it stands for the opposite proposition. You didn't cite anything for that proposition. You cited a case for the proposition that you couldn't seek a refund, and I read that. It isn't – It says the opposite. In a liquidated damages context, it's not a protestable issue. That's really established law. Liquidated damages, you have no right to protest a liquidated damages case, and therefore there isn't any method of the surety, once they pay, obtaining a refund of that matter. And that's the dilemma that the surety faces here. If they have paid – there are several dilemmas. One of them may have – The Trako case is the case you cite. You say it says you can't sue for a refund, but the case said you can sue for a refund. There is one mechanism, which I was about to talk about, which is the Little Tucker Act, but that's limited to $10,000. Well, how could you cite the Trako case for the proposition you can't sue for a refund when it holds that you can sue for a refund? Well, I was really about to get to – I mean, there is an exception, but it isn't really – it's not really a viable remedy for the surety. If they pay money under the bond, they can't get that money back. Maybe they can get part of it back if they make a successful argument under the Little Tucker Act, perhaps, but there's no mechanism in the customs laws once it's paid for them to get the money back. Can I just ask – maybe this is obvious, but then maybe the answer will be easy then. What's – the bond is a contract between you and the United States, right? So you pay something, and it later turns out that the condition under which you paid turns out to be false. There really isn't a contract remedy to get the money back under the Big Tucker Act? In the customs bond surety area, we have an obligation to pay upon proper demand. We have certain rights to challenge that. In this case, in liquidated damages context, there is no way to get the money back. There's no mechanism. There's no protest. Petitions can be filed, but there isn't any formal method for recovering the duties. Including a suit in the Court of Federal Claims under the bond? There's not a lot of authority for that other than the Little Tucker Act that I mentioned, which is, I think, a $10,000 limit. But there isn't any way if we pay $50,000 from the bond, we could go and try to get $50,000 back. So in that regard, there really is a gap in the law as to what the surety can do. And there's another problem with the surety paying early. It could impede the rights of the principal. It could hurt our – if we pay as a volunteer prematurely, we may or may not be able to obtain reimbursement, which is our right. So the surety writes these bonds understanding that the customs laws apply, which gives them certain rights for refunds if they're applicable, and also limits their liability. Under that theory, the surety would never be liable for prejudgment interest because you'd never, under your theory, have a right to sue to make the payment and sue for a refund. So there would never be any prejudgment interest, correct? No, I don't agree because that's why I mentioned the context. Would there be prejudgment interest under that theory? If there's an established breach and there isn't a predicate event, which is required for a breach to occur, and the principal has breached, hasn't done what they're supposed to do under the contract or bond, and there's a proper demand made, the surety has to pay. This is a little unusual because we have the classification issue. If that wasn't there, the surety… What you're saying is every time there's a dispute about payment under the bond, there will never be prejudgment interest, right? No, if the surety doesn't pay after a proper demand, there's… No, no, no. I'm saying for the period that there is a dispute, you're saying there will never be prejudgment interest. So long as the issue was properly protested and remained pending and unfinal. But haven't we specifically rejected that in various cases, including the insurance company of North America case? It wasn't a customs case. It wasn't a protest right in the insurance company of North America. The bond principal did a separate contract dispute, which in the outcome of that didn't affect the surety's rights. Here we're talking about finality of liquidation, which affects everybody. To answer Judge Toronto's question, it is a contract. It's a three-way contract. And the customs laws are incorporated into that contract. And classification is the core issue in protest. I mean, it's really one of the challenges in 1514A. What case suggests that interest shouldn't accrue during the period of the dispute? Well, I believe the – I believe that a TACA and maybe commodities, there are several cases which say that basically there's not a proper – there isn't a proper demand or the surety has reasonably withheld payment. No, but what case says that interest doesn't accrue when there's a dispute? Well, interest accrues – are you talking about prejudgment interest? Yeah. Versus, well, prejudgment interest would not accrue unless it's an unjust withholding. That's what the case law says. What case says that? Almost all of the cases say that. Massachusetts, I believe, says that. The Hills case that's cited within that. This – they're just – I didn't think that was in dispute because it's really all talk about that there has to be some sort of unjust withholding. This is an equitable remedy. It's implied that there has to be some sort of – Do cases say that there's no prejudgment interest when there's a dispute as to payment? There are cases – yes, the general cases talk about it. There's just a run-of-the-mill – What case says there's no prejudgment interest that accrues during a period of a dispute? Which case says that specifically? Could you repeat that? I'm sorry. Which case says that prejudgment interest does not accrue during a period of dispute? Does not accrue during a period of dispute. I'm not sure that there's a case that says that specifically. But here we're not talking about a dispute that affects whether there's a bond breach or not. And that is the difference. This case is a little different than the typical contract case. If it's just an ordinary dispute, contract dispute, you're correct. The prejudgment interest would accrue as long as the surety's liability under the bond is firm at that point, fixed and firm at the time of demand. But here that was not the case. Why is that not the case? Because the surety did not contract contracts to pay money based upon proper demands. In this case, the demand was not ripe in 2006 because of the underlying classification case. If that were not here, the surety, if they had not paid in 2006, they'd be liable for prejudgment interest under the case law. Because as the government will tell you, they need to be made whole for the delay in payment. So here the reason for the delay in payment was what I had mentioned, is that we did not have a final determination on the tariff classification, which was the predicate event for establishing liability under the bond provision on 1362K. You're taking your chances that you're wrong though. And in fact the government is correct. Well, I don't really view it as a chance other than I would agree that the surety is fraught with risks in this case because they're afraid to pay too early because if they do, like as I mentioned, there's virtually no way of getting the money back, if any way at all, other than the Tucker Act that I mentioned. And they could be undercutting their ability to obtain reimbursement because they could be viewed as a volunteer paying if it's not a proper demand. So in this case, the surety really is sort of in a tough spot. But really the bottom line is they really contract for liability that's really defined by the customs laws. And this court has held that the customs laws really are part of the bond. And really what we're asking in this case and what our concern is, is that the government is moving towards a sort of a mandatory imposition of prejudgment interest. And really the cases in general contracts seem to be moving more in that direction. But it really depends upon the circumstances of the case. And I just mentioned at the end in the Great American case, which came down at the end of last year, that case we had some involvement in. I realize the prejudgment interest issue was dismissed because the government didn't raise it timely. But the court really said some things in that case that I think are really relevant here. Okay. Well, you've read it. You're over your time. We'll give one of you two minutes for rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court. I'd like to first address Mr. Junker's allegation that the government's collection action is premature because of failure to exhaust. Mr. Junker admits that the mitigation petition is not required by law and the government doesn't file a petition. Can you just address this threshold question to me? I must say I find it odd to think about exhaustion as running against the government. I can imagine an argument that says in certain circumstances there is no final agency action for APA review, but exhaustion against the government? Can you address that idea? Well, perhaps we share the same confusion, which is because there was no petition, the government doesn't exhaust itself. It needs a petition in order to act. I suppose there had been a petition. Would the government be obligated to complete the mitigation proceedings? No. Or bring the suit? No, this is not a mandatory sort of petition. This kind of petition for mitigation is informal, permissive, and voluntary, and it's granted at the discretion of customs. So if a formal petition had been filed and customs had not responded yet by saying, we disagree, you're going to pay the whole thing, or maybe it said, we're still thinking about it, but then went into court, sued, and the CIT said, it feels to me premature to adjudicate this while you are still thinking about it. What's the doctrinal rubric under which the CIT can say that sensible thing? It's clear that even if there was a petition that was filed, and this is a hypothetical obviously because there was no petition in this case, but even if a petition was filed, the law says that we do not have to wait for the completion of that administrative process in order to come to court. But 1505C says that we can sue immediately to recover liquidated damages. COCO per cal also supports that view. Is it possible that the CIT might grant a stay of that action pending the outcome of the mitigation proceeding? I suppose it could be possible, sure. I don't know. This would be a problem. Let me stop. I believe it would have to be remanded to customs in order for them to act on it. But there's no reason for that at all. Why would it have to be remanded to customs? If the court wanted to have a formal position of customs, if there was some sort of reason for that. If the court wanted customs, it's used. Are there cases that say that customs can't act on a mitigation petition after the government sues to collect the liquidated damages? I don't believe so, Your Honor, but I don't know that customs would do that as a practical matter simply because the matter would be in court. And in this particular case, the case is pretty straightforward. I don't know that there would be anything there because it was the failure of Millennium to present the permit at entry for its lumber. And those permits, it's pretty concrete. There are no extenuating circumstances to that. The Soffit Lumber Agreement, we need permits, and that's the way it is. Well, even if there might be extenuating circumstances, nothing's raised here. Correct. That's absolutely right, Your Honor. That's absolutely right. I mean, so we are talking in hypothetical here because what the facts of the case are are that Millennium brought in its lumber. It was required under the SLA and under the bond to produce the permit. It did not. We gave them proper notice. Twenty days after that notice, liquidated damages were incurred. There was a breach of the bond. According to the bond conditions, under 1623, we are allowed to have a bond. Under the bond conditions, Well, the wood doesn't come in without a bond, does it?  The wood doesn't come in. No, it does not. Absolutely, Your Honor. You're absolutely correct because that's part of customs enforcement procedure. That's part of what their authority is. In order to comply with the rules governing import into the United States, we require a bond in such a case as this or for other cases that may involve contaminated food or some other sort of thing. It's like we need a bond in order to uphold our laws. So, yes, absolutely right. Now, Mr. Junker says that The bond's a little unusual here in the sense that it seems to create liquidated damages obligation rather than to guarantee a liquidated damages obligation that exists elsewhere in the law, right? I'm not sure I understand your question, Your Honor. I'm sorry. Well, a bond, a surety bond, usually guarantees that an obligation will be performed. It doesn't create the obligation in the first place. Correct. I understand the bond here. The source of liquidated damages obligation is in the bond. It's not in a regulation or statute. Am I correct about that? Well, the bond incorporates regulations. What regulation imposes liquidated damages? What regulation imposes? Yeah. Okay, so for 19 U.S.C. 1623, right? No, sorry. 19 U.S.C. imposes liquidated damages. Is that what you're saying? Yeah. Okay. So, the bond incorporates a softwood lumber agreement through 19 CFR 11362K, right? And the liquidated damages occur under 19 CFR 11362AII, where it says that customs, you're supposed to pay. And then the obligation... But the regulation doesn't provide for liquidated damages, does it? It provides for damages, Your Honor. So, under 11362L, there's assessment of $100 per 1,000 board feet. And that's how it gets incorporated into the bond. Okay. But it's by agreement, isn't it, that the liquidated damages are due rather than apart from the agreement? Rather than apart from the agreement? I'm not quite sure I understand. Well, usually, a statute or regulation would impose liquidated damages if you don't do something. As I understand it, the obligation to pay the liquidated damages results here from the agreement that's reflected in the bond. Am I correct? The softwood lumber agreement? Well, the bond agreement itself provides for liquidated damages, I think. I think that's true, Your Honor. Because that's what, if you don't comply with the entry requirement, then the bond is supposed to guarantee the performance, as you noted. And so the liquidated damages would be imposed if you fail to perform. But the liquidated damages are the 100 bucks per board feet. Yes, that's right, per 1,000 board feet. There are lots of 1,000 board feet. That's in the reg, yes. Yes, correct. And it's incorporated into the bond, yes. There aren't any other liquidated damages other than that $100 per... No, no. It's specifically that. So, in the... right. Okay. So, Mr. Junker also said that the administrative process that had failed to be resolved, but there were no underlying issues that needed to be resolved because there was no petition, as we noted, and also the letter of May 23, 2005 certainly made very clear that there were no administrative proceedings going on. They failed to give the permit that the government had to protect its rights and would be filing suits. The statute of limitations was not told. We had a six-year statute of limitations. Nothing was done in between that time. So, even if there was some misunderstanding that something was going on at the administrative level, the 2005 letter made very clear that we did not have the same impression, and Millennium and Excel at that time had the opportunity to file a petition, and they had 11 months to do so. We didn't file suit until 2006. Could they have filed a petition during the extended period when you said you had placed the case on hold? Sure, they could have. Absolutely. They also could have waived the statute. They could have waived the statute, and that goes to, if I could turn to prejudgment interest before my time runs out. Can you address this matter of whether, by any means, including in the Court of Federal Claims a contract action under the Tucker Act, had they paid the bond and then it later turned out that the classification that you imposed was reversed judicially, they could get the money back? We believe that there would be a way to get the money back. There is no formal mechanism, because this is an unusual case where we have liquidation tied with classification. However, that's not to say that if there wasn't a bond breach, certainly we could sue under the breach of the bond, and also that if they had paid, which that didn't happen here, but if they had paid and Millennium had prevailed in its classification action, that there would be a way. What is the way? What's the theory of recovery? Well, the theory would be if, under those specific circumstances, the court has equitable powers to perhaps give it back. Customs is not interested in it. I'm not sure about that. I think there are cases about this which neither party has cited, and I'm not sure that there is a way to get the money back. There's no agreement between the surety and the government to return it if it's an overpayment. That's true, Your Honor. Has the government ever done a bond refund where it turns out that the classification was incorrect? No, it has not, which is why I stand here being uncertain as to how, what mechanism we would use. However, that's not to say that Excel could have done something besides just waited, waited all this time. It could have signed a statute of limitations waiver. At that point, there is no interest running. Our demand was solely for the liquidated damages amount. It wasn't for interest. So it could have signed a statute of limitations waiver, allowed Millennium to go through its process, and then paid. So we wouldn't have had to file a collection action. At the time of the 2005 letter, when we gave a formal demand upon Excel, the classification case was well underway. The classification case was filed in 2002. And I know because I personally handled that classification case that we were at the very end of discovery. So Excel could have assessed its risk at that point in time as well and decided that a statute of limitations waiver would be a good way to go. Another possibility would be that because the statute of limitations was coming due, that we file an action, which we did, and they could have possibly deposited the money into the court in an interest-bearing account. That's possible. In which case, the interest would then run while it's in the account while we litigate this case. Do bond companies in the context of the CIT, do bond companies ever interplead bonds? I don't know, Your Honor. I never saw one. I don't know, Your Honor. I'm sorry. But the point is that possibilities exist. Whether or not they exist, they still have the money, right? And that's exactly right, Your Honor. In this particular case, it's like that's not what happened. It's like we prevailed on the classification. The customs decision at entry to require the permit was held to be correct. We went through this entire process. And here we are now before you. We did not have the money. We were entitled to it. And we should be awarded prejudgment interest simply to make us whole. And that's it. Okay. Thank you, Ms. Lin. Thank you very much, Your Honor. Is that me, Your Honor? You have two minutes, yes. Thank you. Just a few very, very brief points, Your Honor. First of all, we submit that the discussion of whether something is mandatory or permissive is simply inappropriate. Those are requirements for 2415A for calculation of an extension of the statute of limitations. It has nothing to do as a matter of statute or policy with respect to the application of the exhaustion doctrine. Secondly, I'd like to point out that I would encourage you to read two things closely in light of Ms. Lee's comments. First of all, the letter of May 23, 2005, says that the government will take steps to protect its interests. This came from the Finance, Penalties, and Forfeitures Office, not from the Department of Justice with respect to the lawsuit or anything else. I don't know why they're writing that if this is not in the context of an administrative proceeding or why they would put something in advance. I asked this court, if you put a case on hold, would you expect the party to submit its brief anyway? It's no different in that administrative proceeding. Finally, I would ask the court to look carefully at the language of Ataka and Burkow-Coco, in which they're talking about whether the court can bring a case. They are trying in that case to determine when the statute of limitations period ran. They are looking at when the court's rights to bring an action accrued for purposes of starting the statute of limitations period. That's all. Again, a 2415A consideration. My final point, Your Honor, is consider what this court will have done if it fails to apply 2637 to liquidated damages proceedings. This is a very conceivable scenario. The government has every incentive at the time or even before it brings us notices of liquidated damages to go immediately to court. Get a judgment and have, if you rule against Mr. Purcell's client and Millennium on the issue of interest, to get that interest running with a judgment. That would be at the same time that the importer is proceeding under the mitigation proceedings under the Administrative Claims Act and also, at the same time, the importer is seeking its remedies under protests and judicial appeals and many protest denials. I think we're out of time. Thank you.